**37935.   YATES _v._ UNITED STATES RUBBER COMPANY.**

584

Decided October 15, 1959—Rehearing denied
October 29, 1959.

*William Hall, George D. Stewart,* for plaintiff in error.
*Wyatt & Morgan, L. R. Morgan, James R. Lewis, E. W. Fleming,* contra.

TOWNSEND, Judge. ■ It is clearly established by the testimony in the case, both that taken at the original hearing which by stipulation is considered here, and additional testimony taken before the Medical Board, that asbestosis is a condition resulting only from the inhalation of asbestos fibers and characterized by chemical changes in the lungs which result in decreased lung capacity and increased susceptibility to lung infection, and that the claimant, having worked for a number of years in a location where asbestos fibers were present in the air, was exposed to this condition. The resulting chest pain, cough and infection were first diagnosed as bronchiectasis and half of the lower lobe of the left lung was surgically removed in March, 1955. Tissue slides were microscopically examined and it was then definitely established that pulmonary asbestosis existed. Code (Ann.)

§ 114-812(b) defines asbestosis as "a disease of the lungs caused by breathing asbestos dust, characterized anatomically by generalized fibrotic changes in the lungs, demonstrated by X-ray examinations or by autopsy." It is to be noted that under the wording of this section it is not stated as contended by the defendant in error that "asbestosis can only be demonstrated by X-ray or by autopsy," in the sense that these methods of diagnosis are exclusive. Since autopsy is an examination of tissue after death, it cannot, in its strictly technical sense, be applied during the life of the subject. As related to a living person, the Code section can mean only that the fibrotic changes in the lung resulting from the disease must be demonstrable by X-ray, not that X-ray is the only instrument of diagnosis. The fibrotic condition of this claimant's lungs, which was demonstrable by X-ray, was caused by the asbestosis, but the disease itself was not positively identified until after removal of a part of the lung, when microscopic examination of the tissue by means of biopsy positively identified the particles. This is sufficient to meet the requirements of the statute, and was in fact a surer method of diagnosis than X-ray unaided by other techniques. While the claimant's physician stated on cross-examination, "You can't make a diagnosis of asbestosis from X-ray; at least I can't," it does not follow that the witness' testimony is so in conflict with Code (Ann.) § 114-812 (b) as to lose its probative value. He stated, as to the abnormal shadows shown on the lungs by X-ray that "these are changes you see in a patient who has had long standing chronic bronchitis regardless of what causes [it], asbestosis or silicosis or just bacterial infection." X-ray is a diagnostic tool in that, within certain limits, it reveals physical conditions which the physician may then relate to one or another disease or abnormality. This doctor found a physical condition existing in the patient's lungs which was *a result* of a cause not determinable absolutely except through actual examination of the tissue involved. The X-ray could do no more than this. The biopsy in connection with the X-ray determined both the presence of asbestosis and the effect of it upon the lungs. This view of the patient's case, which was accepted by the Medical Board and

the hearing director, is substantiated by legal and proper evidence.

■ Code (Ann.) § 114-801 provides that the disablement or death of an employee resulting from an occupational disease shall be treated as the happening of an injury by accident. As was pointed out in *Free* v. *Associated Indem. Corp.*, 78 *Ga. App.* 839, 844 (52 S. E. 2d 325) some industrial diseases develop slowly; a point for commencing compensation must be determined in such cases as of a given date, just as the compensable point in other workmen's compensation cases is determined by the date of accident, and accordingly "disablement," which is the equivalent of "accident" means the earliest time the disease can be identified when the employee actually becomes physically unable to work. Disablement under Code (Ann.) § 114-802 means "the event of an employee becoming actually incapacitated because of occupational disease from performing" (1) the work he was last doing, or (2) work in any other occupation "for remuneration." The section then defines "remuneration" as a monetary return "which equals or exceeds $33\frac{1}{3}\%$ of the average weekly wages at the time of the last injurious exposure." This can only mean that if the employee can no longer perform the duties of his employment under exposed conditions, then whether or not "disablement" (the equivalent of accident) occurs must be determined by whether or not the claimant can find other employment equal to at least one third of her former wages (or $20 per week if that is the lesser figure). If she is still gainfully employed, and is earning at least one third as much as she earned under exposed conditions in her last employment, there is no disablement. If there is no disablement, there is no "event" which can mark the starting point of compensation. This meaning is borne out by the next sentence, which defines disability as "the state of being *so totally* incapacitated." Disability results when, as a result of the occupational disease, the claimant cannot earn as much as $20 per week or one third of her former wages. The event which determines disability is the event of becoming thus incapacitated as a result of the disease, and this is disablement, the starting point of the disability and of the compensable period.

It follows that where there is no such loss of wages there is no

disablement, and consequently no disability. In such a case there is no event the occurrence of which makes the disease compensable. The law does not contemplate such a thing as partial disability in the occupational disease statute, except where, under the provisions of Code (Ann.) § 114-805, the condition results in part from an occupational disease and in part from some other condition not compensable, in which event the compensation is reduced proportionately. Such a percentage would have to be based upon two causative factors, one compensable and one not compensable, and there is no such condition shown by this record. As to a condition resulting solely from occupational disease, disability by definition means total incapacity, and this means the reduction of wages by two thirds or impaired earnings not exceeding $20 per week, whichever is lesser.

The intent of the act not to grant compensation for partial, as opposed to total disability is spelled out in relation to injury to specific members by Code (Ann.) § 114-807. This provides that the provisions of Code (Ann.) § 114-406, which refer to injuries to specific members, shall apply as to occupational diseases, except that "there shall be no compensation . . . payable for partial loss of, or for *partial* loss of use of, a member." (Emphasis added). Again, in Code (Ann.) § 114-815, where provision was made for the act to go into gradual effect over a period of years, it was provided "that the maximum amount of compensation payable hereunder shall be as provided for total incapacity by section 114-404, or, in case of permanent partial industrial handicap, as provided in section 114-406 as herein limited, or in the event of death, by section 114-413." There is a conspicuous omission of the only other Code section relating to compensation (§ 114-405), which contains the formula for permanent partial disability. The three sections mentioned contain the formula for permanent total disability, permanent total disability to a specific member, and death benefits respectively. There can be no doubt, construing this chapter in accordance with its plain language and the over-all plan, that compensation for occupational diseases, which formerly had existed in no case, is here granted as to specific diseases only, and then only in the case of total incapacity for remunerative labor (as therein defined) or *total*

loss or loss of use of a specific member, and that partial incapacity was not intended to be taken into account. It follows that that part of the order of the judge of the superior court which reversed the award entered as for partial disability under Code § 114-405 on the ground that the award on the question of disability and disablement could not be sustained is correct. The director could find only a total disability for which compensation is payable under the formula of Code (Ann.) § 114-404, or no compensable disability at all. The director did award total disability compensation between March and September, 1955, but thereafter awarded compensation as for partial disability only. Insofar, however, as the judge of the superior court held that the evidence was insufficient to sustain an award in favor of the claimant, the judgment excepted to is error. There is evidence in the record, both by the claimant herself and by her physician, that she is unable to work, and she has not as a matter of fact engaged in remunerative employment since September, 1955. There is conclusive evidence of disablement, as of the date of the surgical removal of a part of the lung lobe. This is, of course, a question of fact, and this court makes no decision as to what the decision of the Board of Workmen's Compensation should be except to say that, there being evidence from which the board would have been authorized to find disablement and compensable disability as defined in this chapter, it was error for the superior court on appeal to enter a judgment in favor of the defendant. The case should be reversed and remanded with direction that the Board of Workmen's Compensation enter up an award after reconsideration of this record and any new evidence which it may in its discretion desire to receive in accordance with what is said in this division of the opinion. Medical questions would, of course, be referred to the Medical Board under Code (Ann.) § 114-819.

■ Code (Ann.) § 114-820 provides that the Medical Board, upon reference to it of a claim based upon occupational disease, "shall notify the claimant or claimants and the employer and insurance carrier, if any, to appear before the Medical Board at a time and place stated in the notice, and shall examine the employee." The employee shall submit to such examinations,

"including clinical and X-ray examinations" as the board may require, and "The claimant and his employer or insurance carrier shall each be entitled to be present and at his own expense to have present at all examinaations conducted by the Medical Board physicians admitted to practice medicine in the State who shall be given every reasonable facility for participating in every such examination." It appears that at the Medical Board hearing of April 25, 1958, X-rays of the claimant were taken which were later introduced in evidence. While the notice does not appear in the record, some notice must have been given, for the employer was represented by counsel at the hearing. It did not, however, have an opportunity to have a physician of its choosing present at the taking of the X-rays, as appears from the statement of one of the Medical Board members as follows: "We would be reluctant to request claimant, a female person, to expose herself to physical examination in the presence of counsel for the defendant or any authorized agent of the defendant company." The reason is valid as to lay parties, but not as a participating medical witness chosen by the employer if it desired to have such witness present at the examination, or at the taking of the X-rays. If, as appears from this record, no notice was given to the employer apprising him of the fact that an examination, by X-ray or otherwise, was scheduled, then such examination, and the consideration of evidence by the Medical Board based thereon, was in excess of the powers of the Medical Board. One of the bases of this appeal is a proper assignment of error that the Medical Board acted in excess of its powers. In the absence of any contention that the X-rays taken at this time are inaccurate in any respect, it is possible that the defendant was not harmed in this case. However, since the case is being again reversed and remanded, if the Medical Board desires to consider X-rays taken pursuant to its own examination it should conform to the statute and give the employer proper notice of any examination for this purpose.

The trial court did not err in reversing the award of the Board of Workmen's Compensation, but erred in entering final judgment for the defendant.

*Judgment affirmed in part and reversed in part. Gardner, P. J., and Carlisle, J., concur.*