**Gerald T. COLONEY,**
**Employee/Respondent,**

v.

**ACCURATE SUPERIOR SCALE**
**COMPANY, Employer/Appellant,**

**General Accident Insurance, Company**
**of America, Insurer/Appellant.**

**No. WD 52800.**

Missouri Court of Appeals,
Western District.

Sept. 23, 1997.

William F. Ringer, Kansas City, for appellants.

Dewey L. Crepeau, Truman E. Allen, Crepeau & Allen, Columbia, for respondent.

Before ULRICH, C.J., P.J., and HANNA and SMART, JJ.

ULRICH, Chief Judge, Presiding Judge.

Accurate Superior Scale Company and General Accident Insurance Company of America (ACCURATE) appeal from the permanent partial disability award of the Labor and Industrial Relations Commission (Commission) affirming the Administrative Law Judge's (ALJ) award of $24,491.14 to Gerald T. Coloney. ACCURATE asserts the Commission erred in interpreting the "last exposure rule," section 287.063, RSMo.1986, as

amended. ACCURATE claims that it was not the last employer to expose Mr. Coloney to the hazards of the occupational disease for which his claim for compensation was made. Specifically, ACCURATE claims that section 287.063 imposes liability only at the time when an employee becomes "disabled" or incapacitated causing absenteeism from work. The Commission's decision is affirmed.

## FACTS

Mr. Coloney began working at ACCURATE in August 1988. The primary business of ACCURATE was calibrating large truck and forklift scales with capacities of ten to several hundred thousand pounds. Part of Mr. Coloney's work at ACCURATE required the repeated placement and removal of weights from scales to determine their accuracy. During a "light" day, Mr. Coloney lifted between 50,000 and 100,000 pounds of weights. During inspections and at other certain times, the amount of weights lifted by Mr. Coloney in a day increased to 300,000 to 500,000 pounds.

In 1990, Mr. Coloney began noticing functional problems in his hands and shoulders, and he sought medical treatment in September through November of 1991.[1] The physician seen by Mr. Coloney diagnosed the condition as "arthralgia of the left shoulder and possible rotator cuff syndrome, possible mild AC arthritis, possible bursitis and tendinitis." The physician subsequently prescribed Naprosyn, recommended that Mr. Coloney tape his hands, wear a brace, and receive injections. Sometime later, ACCURATE changed Mr. Coloney's duties from lifting weights and calibrating scales to a sales position. His hands improved. On February 27, 1992, Mr. Coloney filed a Claim for Compensation with the Division of Worker's Compensation alleging his left shoulder was injured.

Sometime in April of 1992, Mr. Coloney quit ACCURATE. He began working for "Bugs Away," a residential pesticide compa-

ny. At "Bugs Away," Mr. Coloney's duties consisted of spraying residences with insecticide. He strapped a vacuum pump sprayer, weighing 11 to 12 pounds to his shoulder. To operate the sprayer, he depressed the trigger of the wand that extended from the tank that contained the insecticide. While employed at the pest control company, Mr. Coloney also began a "handyman" business. Mr. Coloney continued to experience physical problems in his hands and shoulders, and he sought medical treatment twice in May 1992.

In September 1992, Mr. Coloney quit "Bugs Away" and continued his repair business. On September 23, 1992, he amended his February 1992 claim for compensation, filed while he was employed by ACCURATE, to include claimed injury to his right shoulder. Mr. Coloney, in the amended claim, continued to designate ACCURATE as his employer rather than "Bugs Away" or his self-employed business.

Mr. Coloney sought additional treatment for upper extremity complaints on December 4, 1992. He amended his claim for compensation a second time asserting that both hands were affected by the claimed malady, and he continued to designate ACCURATE as his employer. Mr. Coloney received additional medical treatment for upper extremity complaints, primarily to the right ring and little fingers on both his hands, culminating in outpatient surgery on those fingers on November 18, 1993. Medical treatment continued through March 7, 1994.

Currently, Mr. Coloney asserts that he is unable to do work that requires him to reach over his head; experiences pain in his hands and shoulders when working with sheetrock; has difficulty using a hammer; cannot dig with a shovel; cannot hold a bowling ball; cannot swing a bat; and cannot use pliers for an extended time with his right hand. On May 14, 1996, the Commission affirmed the ALJ's award of $24,491.14 in permanent partial disability compensation. This appeal followed.

---

1. Mr. Coloney was diagnosed with bilateral carpel tunnel syndrome in 1987 while working at Oak Stone Construction. He received a settlement from Oak Stone Construction based on an approximate disability of 7 1/2% in both wrists due to bilateral carpel tunnel syndrome. However, this injury is not at issue in this appeal as Mr. Coloney seeks recovery from ACCURATE for bilateral carpel tunnel syndrome in his hands and shoulders rather than his wrists.

## STANDARD OF REVIEW

■ The Commission's decision is reviewed using a two-step evidentiary evaluation process to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it. *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App. 1995). The record and all reasonable inferences drawn from the evidence therein are viewed in the light most favorable to the findings and award to determine whether they are supported by competent and substantial evidence. *Id.* If the record supports the award, determination is then made regarding whether the Commission's findings and award are clearly contrary to the overwhelming weight of the evidence contained in the whole record before the Commission. *Id.* Decisions that are clearly interpretations or applications of law, rather than determinations of fact, are reviewed for correctness without deference to the Commission's judgment. *West v. Posten Constr. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991).

## ACCURATE'S LIABILITY FOR MR. COLONEY'S OCCUPATIONAL INJURIES

ACCURATE claims the Commission erred in determining that it was liable for Mr. Coloney's carpal tunnel syndrome illness for two reasons: (1) Mr. Coloney never became "injured" for purposes of worker's compensation while working for ACCURATE; and (2) under the last exposure rule set forth in *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286 (Mo. banc 1995), ACCURATE cannot be liable for Mr. Coloney's injuries because ACCURATE was not the last employer to expose Mr. Coloney to carpal tunnel-producing

work conditions. For the reasons explained below, the Commission's decision is affirmed.

## I. WHETHER MR. COLONEY SUSTAINED A "COMPENSABLE INJURY" UNDER THE WORKER'S COMPENSATION ACT

■ The first issue to be determined is whether Mr. Coloney was "injured" within the meaning of the Missouri Worker's Compensation Act. Determination that the employee has been "injured" is generally necessary before the state can assess liability against any employer. § 287.120 RSMo. (1993). Section 287.120 states in part: "[e]very employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment ...." The "injury" requirement is consistent with the purpose of the Worker's Compensation Act which is to provide compensation for certain injuries sustained by employee through employment. *Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 618 (1977).

■ Carpal tunnel syndrome, which Mr. Coloney experienced, is a known occupational disease. *Weniger v. Pulitzer Publ'g Co.*, 860 S.W.2d 359, 360 (Mo.App.1993); *Elgersma v. DePaul Health Ctr.*, 829 S.W.2d 35, 36 (Mo. App.1992). An "occupational disease"[2] is not considered an "injury" under section 287.120 as defined by section 287.020, subsection 3:

The terms "injury" and "personal injuries" shall mean violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body, such as artificial dentures, artificial limbs, glass eyes, eyeglasses, and other prostheses which are

2. Section 287.067 defines occupational disease as:

1. an identifiable disease arising with or without human fault out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the diseases follow as an incident of an occupational disease as defined in this section. The disease need not have been foreseen or expected but after its contraction it

must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.

2. An occupational disease is compensable if it is clearly work related and meets the requirements of an injury which is compensable as provided in subsection 2 and 3 of section 287.020. An occupational disease is not compensable merely because work was a triggering or precipitating factor.

placed in or on the body to replace the physical structure and such disease or infection as naturally results therefrom. *These terms shall in no case except as specifically provided in this chapter be construed to include occupational disease in any form* ...

§ 287.020.3(3) RSMo (1993) (emphasis added).

However, section 287.063 states:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists.

2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure.

§ 287.063 RSMo. (1993). Missouri courts have interpreted section 287.063 to provide that an employee with an occupational disease is "injured" within the meaning of the section 287.120 when the disease causes a "compensable injury." *Hinton v. National Lock Corp.,* 879 S.W.2d 713, 717 (Mo.App.1994)(citing *Prater v. Thorngate, Ltd.,* 761 S.W.2d 226, 228 (Mo.App.1988)). Like any other worker's compensation case, Missouri courts have held that there must be medical evidence of a direct causal connection between the conditions under which the work is done and the occupational disease. *Sheehan v. Springfield Seed & Floral, Inc.,* 733 S.W.2d 795, 797 (Mo.App.1987); *Estes v. Noranda Aluminum, Inc.,* 574 S.W.2d 34, 38 (Mo.App.1978).

ACCURATE relies on several cases as support for its position that a "compensable injury" does not occur until the occupational disease causes the employee's inability to work. *Lococo v. Hornberger Elec., Inc.,* 914 S.W.2d 67, 68 (Mo.App.1996); *Oberg v. American Recreational Prod.,* 916 S.W.2d 304, 306 (Mo.App.1995); *Simmerly v. Bailey Corp.,* 890 S.W.2d 12, 14 (Mo.App.1994); *Tunstill v. Eagle Sheet Metal Works,* 870 S.W.2d 264, 270 (Mo.App.1994); *King v. St. Louis Steel Casting Co.,* 353 Mo. 400, 182 S.W.2d 560, 562 (1944).[3] ACCURATE asserts that, applying the rule of these cases, it would not have been Mr. Coloney's employer when he became "disabled" because he did not miss work until November 1993, well after he left ACCURATE's employment. The logic of ACCURATE's argument asserts that because the Commission determined Mr. Coloney was not exposed to a repetitive motion hazard while employed with "Bugs Away," Mr. Coloney would have been "last exposed" to a motion hazard able to cause carpal tunnel syndrome while self-employed, just before his disability in November 1993.

Mr. Coloney, however, asserts that he is not precluded from seeking financial redress from injury resulting from an illness before he misses work because of the injury. He contends that he is entitled to compensation when the "injury" is diagnosed. He argues, therefore, that because he was first diagnosed in 1991 while employed at ACCURATE, ACCURATE is liable for his injuries.

Whether a claimant becomes "disabled" either at the point of diagnosis or when the employee misses work was at issue before the Missouri Supreme Court in *Johnson.* There, the employee filed a worker's compensation claim following his termination from his employer, Denton Construction. *Johnson,* 911 S.W.2d at 287. The employee never missed work while at Denton.[4] *Id.* The

---

**3.** These cases are consistent with other jurisdictions requiring actual loss of work before deeming the claimant injured. *See, e.g., Yates v. United States Rubber Co.,* 100 Ga.App. 583, 112 S.E.2d 182, 186 (1959) ("[W]here there is no such loss of wages there is no disablement, and consequently no disability"); *Muniak v. ACF Indus., Inc.,* 7 A.D.2d 258, 260, 182 N.Y.S.2d 539 (N.Y.A.D.1959)("No doubt a person may be 'disabled' in a medical sense and still work; but the

statute does not seem to embrace this kind of disablement").

**4.** The time sequence in *Johnson* was as follows:
**March 1992**—employed at Denton Construction
**Late March 1992**—symptoms of numbness and pain
**March 28, 1992**—diagnosed with medial epicondylitis, prescribed medication, and given splints to wear; doctor recommended that

*Johnson* court, however, awarded compensation to the employee and ascribed liability to Denton for the employee's inability to do certain job-related activities at Denton. *Id.* If *King v. St. Louis Steel Casting Co.* and its lineage had been applicable in *Johnson,* Denton could not have been liable because the employee never missed work. Obviously, therefore, the *Johnson* court did not require the employee to miss work before being eligible for an award or before attributing liability against the former employer.

Following *Johnson,* this court upheld an award in *Anderson v. Noel T. Adams Ambulance Dist.,* 931 S.W.2d 850 (Mo.App.1996), where the employee did not miss work as a result of an occupational disease.[5] In *Anderson,* the employee began experiencing symptoms of bilateral carpal tunnel syndrome in June 1992. *Id.* at 852. Her employment was terminated for unrelated reasons the same month. *Id.* She filed a claim in March 1993 against her former employer after filing an injury report the prior month asserting carpal tunnel syndrome and post traumatic stress disorder. *Id.* She filed a second claim in March 1995 against a subsequent employer for carpal tunnel syndrome. *Id.* This court, applying *Johnson,* determined that like Mr. Johnson, Ms. Anderson filed her claim after her employment with employer was terminated. *Id.* at 853. She had not missed work with her employer because of the maladies for which she filed her claim. *Id.* When she filed the claim, she was not employed by her present employer. *Id.* The award for carpal tunnel syndrome was affirmed. *Id.* Therefore, *Johnson* and *Anderson* illustrate that an inability to work is not a prerequisite for recovery under the Worker's Compensation Act.

■ Allowing employees to recover for occupational diseases despite not having missed work is consistent with the purpose of the Missouri's Worker's Compensation Act. The "injury" requirement of the Act necessitates that the employee's "injury" create a harm that tangibly affects the employee's earning ability. *Johnson,* 911 S.W.2d at 287. Requiring that the harm tangibly affect the employee's earning ability upholds the intent of the legislature in enacting the Worker's Compensation Act which was to provide indemnity for loss of earning power and disability to work and not for pain, suffering, or mere physical ailment. *Simmerly v. Bailey Corp.,* 890 S.W.2d 12, 14 (Mo.App. S.D.1994); *Dees v. Mississippi River Fuel Corp.,* 192 S.W.2d 635, 642 (Mo.App.1946); *Renfro v. Pittsburgh Plate Glass Co.,* 235 Mo.App. 226, 130 S.W.2d 165, 171 (1939). As both *Johnson* and *Anderson* recognize, while missing work suggests the requisite earning loss, other factors are considered in determining whether and at what point an employee has lost earning ability.

■ Applying *Johnson* and *Anderson,* Mr. Coloney suffered a compensable injury. While Mr. Coloney never missed work while employed at ACCURATE, other factors exist that indicate the requisite loss of earning ability. The medical evidence revealed that Mr. Coloney is unable to perform various vocational tasks including activities that require him to reach over his head or to hold heavy objects. He experiences pain in his hands and shoulders when working and performs certain work tasks for an extended period of time only with difficulty. The limitations on Mr. Coloney's ability to perform

---

Johnson do light duty and not use a come-along.
April 14, 1992—diagnosed with bilateral carpal tunnel syndrome; left more involved than right.
April 21, 1992—another doctor confirmed the earlier diagnosis and advised that Johnson "see a hand surgeon."
**Few days after April 21, 1992**—Johnson fired
**May 4, 1992**—claim for worker's compensation
**Mid May 1992**—employed at "Lock and Sand"

**5.** The time sequence in *Anderson* was as follows:

**1990–June 1992**—employed by Noel T. Adams Ambulance District
**June 1992**—symptoms of bilateral carpal tunnel syndrome
**February 22, 1993**—filed injury report
**March 1993**—became self-employed
**March 11, 1993**—filed worker's compensation claim on NTA
**May 1, 1993**—employed by Adair County Ambulance District (ADAIR)
**June 1993**—first consulted a physician about symptoms of carpal tunnel syndrome.
**March 1, 1995**—filed worker's compensation claim against ADAIR

vocational tasks affects his earning ability; as the ALJ noted, "[Mr. Coloney] is a muscular individual who used his physical strength to earn his livelihood and now is no longer able to use his upper extremities to any significant degree in his employment as a handyman." The evidence, therefore, is sufficient to support the Commission's finding that Mr. Coloney suffered a compensable injury.

## II. ACCURATE'S LIABILITY UNDER THE "LAST EXPOSURE RULE"

Having determined Mr. Coloney was compensably injured under section 287.063, whether ACCURATE is liable for Mr. Coloney's injuries under the last exposure rule is determined. Whether ACCURATE is liable for Mr. Coloney's injuries requires this court analysis of the "nature of the claim." Central to this question is the substance of the claim and the date on which the claim was filed. Making this determination is crucial because Mr. Coloney's original claim was filed when he was employed at ACCURATE while his first and second amended claims were filed when he was working at "Bugs Away" and when he was self-employed. Each of Mr. Coloney's injuries will be addressed in turn.

### A. ACCURATE's Liability for the Injuries to Mr. Coloney's Left Shoulder

The first issue to be determined is ACCURATE's liability under the last exposure rule for the injuries to Mr. Coloney's left shoulder. The last exposure rule imposes liability upon the "employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure." § 287.063 RSMo.

In *Johnson*, the Missouri Supreme Court analyzed the last exposure rule. There, the employee filed a worker's compensation claim immediately following his termination from his employer, Denton. *Johnson*, 911 S.W.2d at 287. The employee then started working for another employer, Lock and Sand. *Id.* The court analyzed the last exposure rule and held:

in order to determine the employer liable for a particular occupational disease, it is *first* necessary to evaluate the nature of the claim at issue ... The starting point in applying the last exposure rule is that the employer liable for compensation is the last employer to expose the employee to the occupational hazard prior to the filing of the claim. Therefore, Denton was the employer in whose employment [the employee] was last exposed to the hazard of the disease *for which claim is made.*

*Id.* at 288.

Applying *Johnson* to this case, ACCURATE is liable for the permanent disability to Mr. Coloney's left shoulder. Mr. Coloney filed a claim for injury to his left shoulder while still working at ACCURATE. Like the employee in *Johnson*, the medical evidence shows that his claim was for a disease incurred while working for ACCURATE. As in *Johnson*, ACCURATE was the last employer to expose Mr. Coloney to the occupational hazard prior to the filing of his claim. ACCURATE, therefore, is liable for the injury to Mr. Coloney's left shoulder just as the employer in *Johnson* was liable for the employee's injuries because it last exposed the employee to the disease producing conditions.

### B. ACCURATE's Liability for the Injuries to Mr. Johnson's Right Shoulder and Hands

Next, whether ACCURATE is liable under the last exposure rule for the injuries to Mr. Johnson's right shoulder and hands is determined. As stated earlier, the last exposure rule imposes liability on the "employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure." § 287.063 RSMo. Because Mr. Coloney's first and second amended claims were filed while he was working at "Bugs Away" and while he was self-employed whether ACCURATE was the last employer to expose Mr. Coloney to the conditions which caused the injury to his right shoulder and hands must be determined.

■ Determining whether ACCURATE last exposed Mr. Coloney to the disease producing conditions that caused the disease is central because Mr. Coloney's first and second amended claims cannot relate back to the time his original claim was filed so as to hold ACCURATE liable for the assertions they contain. Amended claims relate back to the date of the filing of the original complaint so as to hold an employer liable where the injuries alleged in the amended claim perfect or amplify the original claim. *Ford v. American Brake Shoe Co.*, 252 S.W.2d 649, 652 (Mo.App.1952). However, if the injuries alleged in the amended claim are "new and distinct" then the claims will not relate back to the original claim. *Id.*

■ Mr. Coloney's original complaint, filed while he was still employed at ACCURATE, alleged injuries to only his left shoulder. Not until late 1992, after his employment at ACCURATE had ended, did he amend his claim to include injuries to his right shoulder and his hands. Because Mr. Coloney's second and third amended worker's compensation claims alleged additional injuries which were not alleged in his original claim against ACCURATE, they constitute new and distinct claims, and thus, do not relate back to the date of his original claim.

The fact that the claims do not relate back to the time Mr. Coloney's original claim was filed, however, does not relieve ACCURATE of liability. Under *Johnson*, ACCURATE will still be liable for his injuries if it was "the last employer to expose the employee to the occupational hazard prior to the filing of the claim." *Johnson*, 911 S.W.2d at 288.

The Commission affirmed the ALJ's finding that Mr. Coloney was exposed to carpel tunnel syndrome producing conditions while employed at ACCURATE. The ALJ stated the following in pertinent part:

I find that Claimant did sustain an occupational disease as a result of his continuous lifting and transporting of heavy weights over a period of almost four years. Dr. James T. Leslie, an orthopedic surgeon, who examined Claimant on behalf of the Employer–Insurer, stated: "The 50–lb. weight that he utilized in his scale duties is rather impressive." I would certainly agree with Dr. Leslie's statement. There can be absolutely no question that this lifting activity, repeated thousands of times over the course of his employment, caused an occupational disease, to-wit: bilateral rotator cuff tendinitis and severe trigger finger syndrome of the ring finger and little finger of the right hand. Employer–Insurer's suggestion that Claimant's subsequent employments caused or contributed to cause Claimant's conditions has absolutely no basis in the evidence presented. Furthermore, the Employer–Insurer made no attempt to impeach or challenge Claimant's description of his job with ACCURATE Superior Scale Company, either on cross-examination, or by presenting witnesses to contradict Claimant's testimony in this regard. Accepting Claimant's description of his work as true, common sense, as well as the medical evidence, leads to only one conclusion, and that is that Claimant's work for ACCURATE Superior Scale Company caused the conditions to Claimant's shoulders and right hand.

The Commission also affirmed the ALJ's finding that Mr. Coloney was not exposed to the hazards of the occupational disease through his work performed subsequent to his employment at ACCURATE. Specifically, the ALJ stated:

I am of the opinion that the Bugs Away job actually would not fall into a repetitive type injury category ... The current work as a handy-man, of course, could involve periods of repetitious activity but he apparently can control his activity pattern in that he is self-employed and the work is rather varied in nature. It is my opinion that there is some permanent partial disability solely attributable to the employment with [ACCURATE].

The facts reveal that the Commission's decision was supported by competent and substantial evidence and was not against the overwhelming weight of the evidence. Mr. Coloney's work at ACCURATE clearly exposed him to conditions causing his carpel tunnel syndrome. Mr. Coloney was required to lift fifty pound weights repeated thousands of times over the course of his employment.

The lifting of these weights required Mr. Coloney to utilize his shoulders and hands extensively. During his employment at AC-CURATE, Mr. Coloney first noticed pain and weakness in his hands and shoulders. Thus, the injuries to his hands and his shoulders that Mr. Coloney asserted in his claim for compensation relate directly to his work activities at ACCURATE.

In contrast, Mr. Coloney was not exposed to repetitive action capable of producing carpel tunnel syndrome while employed at "Bugs Away". At "Bugs Away", Mr. Coloney was not required to lift any heavy objects; the vacuum pump sprayer Mr. Coloney utilized in his employment was attached to his shoulder and weighed only 11 to 12 pounds.

Similarly, while Mr. Coloney was self-employed he was not exposed to conditions capable of producing carpel tunnel syndrome. His main job responsibility was supervision of his employees, a responsibility which did not expose him to any repetitive motions. Additionally, the physical work he performed in his handyman business was varied and did not involve any repeated lifting of thousands of pounds on a daily basis. While his handyman business exposed him to some repetitive motions, mere exposure is not enough to shift liability to a subsequent employer. Instead, the subsequent employer must expose the employee to repetitive motion capable of producing carpel tunnel syndrome. Mr. Coloney's self-employed business was not capable of producing carpel tunnel syndrome due to Mr. Coloney's ability to control his activity pattern. Because Mr. Coloney's employment at "Bugs Away" and his self-employment was not capable of creating carpel tunnel syndrome, ACCURATE was the last employer to expose Mr. Coloney to disease producing conditions prior to the filing of his claim. ACCURATE, therefore, is also liable for the injuries to Mr. Coloney's right shoulder and his hands.

A different approach to determining AC-CURATE's liability would be required had "Bugs Away" and/or Mr. Coloney's handy-man business exposed him to repetitive activities capable of producing carpel tunnel syndrome. In a situation where multiple employers expose an employee to disease producing conditions prior to the filing of a claim, the test enunciated in *Johnson* would not apply. In *Johnson*, the parties requested a ruling on whether liability attaches under the last exposure rule on the party to last expose the employee prior to the diagnosis of the disease or the last party ever to expose the party to the disease. *Johnson*, 911 S.W.2d at 287. When the claim was filed, however, Denton was both the last employer to expose Mr. Johnson to disease producing conditions prior to diagnosis and was the last employer ever to expose Mr. Johnson to disease producing conditions. *Id.* at 287–88. Thus, the court did not reach this issue. *Id.* at 288.

Affixing liability where multiple employers expose an employee to disease producing conditions is problematic because the legislature has given little guidance on how to affix liability in such a situation. While numerous approaches have been articulated in the various circuits regarding determining liability in a situation where multiple employers are involved,[6] analysis of the legislative intent underlying the Missouri Worker's Compensation Act and the last exposure rule are unnecessary in this case.

## CONCLUSION

An occupational disease is, therefore, compensable when the employee suffers a loss of earning ability due to the occupational disease. Under the last exposure rule, liability is then affixed on the employer who last exposed the employee to the hazard prior to the filing of the claim.

The decision of the Commission is affirmed.

All concur.

**6.** *See* Debbie Frey, *Missouri Focus: Note: the Last Exposure Rule: What is the Law in Missouri After Johnson v. Denton Construction Co.?*, 64 UMKC L.Rev. 813 (Summer 1996) (discussing the approaches of various jurisdictions in applying the last exposure rule and advocating Missouri adopt a date of diagnosis approach to affix liability where multiple employers are involved).